OPINION AND JUDGMENT ENTRY
This appeal comes to us from a judgment issued by the Erie County Court of Common Pleas, Juvenile Division, which found minors Shain W. to be abused and Montana W. to be dependent. Because we conclude that the evidence was insufficient to support the trial court's findings and conclusions of law, we reverse.
Appellant, Richard W., is the natural father of Shain and Montana, who were ages ten and three respectively at the time of the initial proceedings in this case. In September 1998, school personnel notified Erie County Department of Human Services ("ECDHS") that Shain may have suffered physical abuse from a spanking administered by appellant. Appellant then voluntarily gave ECDHS temporary thirty day custody of Shain and Montana. Appellant cooperated with ECDHS and attended parenting classes.
In October 1998, ECDHS sought a continuation of the temporary custody order, alleging that Shain was an abused child and Montana a dependent child. ECDHS alleged that "the family is not ready for reunification" since a criminal charge against the father for child endangering was still pending. The court granted continued temporary custody to ECDHS.
Appellant was then acquitted of the child endangering charge. In November 1998, the children's guardian ad litem
("GAL") filed her report recommending that custody be returned to appellant, but that protective supervision be maintained by the agency. ECDHS requested that temporary custody be continued. On November 18, 1998, the magistrate issued recommendations that the children be returned to appellant, but ordered that ECDHS maintain protective supervision during the pendency of the proceedings. Based apparently on this determination, the children were returned to appellant's home.
In mid December 1998, the GAL changed her recommendation concerning protective supervision. Stating that the numerous visits being conducted by the agency were intrusive and harmful to the children, the GAL recommended that protective supervision be terminated. She noted in her second report that between November 20, 1998 and December 10, 1998, five different social workers had made three to five visits per week. At each visit, the children were forced to undress before female ECDHS workers to permit inspection for evidence of abuse. She further reported that this was particularly upsetting to Shain, a fifth grader who is very sensitive and private. She noted that the agency's methods were not beneficial to the children and recommended that they "cease immediately in the style used to date."
On January 5, 1999, a full adjudicatory hearing was conducted. ECDHS presented the expert testimony of a pediatrician. The doctor, who had never examined or interviewed Shain or been given any other information, testified on the basis of a single photograph showing bruises on Shain's buttocks. The doctor stated that one of the marks appeared to be a "sentinel" sign of abuse, that of a hand print which was located on the lower right side of Shain's back, just above the hip. The doctor testified that a blow in this area with sufficient force "could" potentially cause injury to the child's kidney. In the doctor's opinion, any time a parent slaps a child on the buttocks and leaves an identifiable mark, it would constitute abuse and "represents a serious physical risk." However, the doctor acknowledged that, in this case, the bruising shown in the photo would not have been such to cause a substantial risk of death, would not have required medical attention, and would not have permanently or even temporarily physically incapacitated the child in any way, and would not have caused any temporary serious disfigurement.
Appellant then testified, as if on cross-examination. He acknowledged that he had spanked his son, but denied that this action caused the bruising. He stated that his son had been involved in several incidents, including throwing rocks at trains, fighting, failure to turn in school work, detentions at school, and failure to bring notices about his behavior home from school. Appellant stated that he had tried other methods of punishment, including grounding, taking away the child's privileges and toys, and discussions about proper behavior. On the date of the spanking, appellant received messages from school regarding misbehavior and not turning in schoolwork. When confronted with the message, the child denied any wrongdoing and said the teacher was lying. Appellant took Shain to the bedroom, laid him over his knee and spanked him eight to ten times. Appellant said he then talked to his son about the behavior issues, and put him to bed. He testified that it was the first time Shain had ever received a "real spanking." Appellant acknowledged that although he still believed that spanking was an acceptable form of punishment, he did not think he would need to use this method again.
At this point, appellant moved for a directed verdict on the basis that ECDHS had failed to establish by clear and convincing evidence that Shain was at risk of substantial physical harm. The court denied appellant's motion.
Appellant's female neighbor and babysitter also testified that appellant was a good father who spent lots of time with his children. She stated that during the two years she had known him he had never used corporal punishment. She also testified that on the evening of the spanking, Shain was staying at her home while his father was out. Shain had twice ridden her daughter's bicycle to a bad neighborhood area and had been pulled backwards from the bike both times. She noted that Shain was crying and upset after each incident, stating that the children would not return the bike. The neighbor stated that she had sent her roommate, also a woman, to retrieve the bicycle.
The roommate also testified that she had never known appellant to use corporal punishment. She corroborated that on the evening of the spanking, Shain said he had been pulled backwards off his bike by neighborhood youths. The roommate said that after these incidents, Shain returned and was very upset and crying "hard." She also testified that Shain's face was dirty and "messed up." He told her that the older children had taken his bike and had "beat him up." The second time he came back, she noted he had a red mark on his face from where he had fallen or been hit by the children.
On January 7, 1999, the trial court found Shain to be an abused child and Montana a dependent child. On January 9, 1999, the court conducted a disposition hearing. On January 28, the court restored custody to appellant, but awarded protective supervision of both children to ECDHS.
Appellant now appeals from that judgment, setting forth the following sole assignment of error:
 "The Trial Court erred by failing to direct a verdict in favor of Appellant Father because the Department of Human Services failed to show a substantial risk of serious physical harm was caused by the Father under O.R.C. 2919.22."
A motion for directed verdict will be granted when,
 "the trial court, after construing the evidence most strongly in favor of the party against whom the motion is directed, finds that upon any determinative issue reasonable minds could come to but one conclusion upon the evidence submitted and that conclusion is adverse to such party * * *." Civ.R. 50(A)(4)
R.C. 2151.031(B) includes in its definition of "abused child" any child who "is endangered as defined in section 2919.22
of the Revised Code, except that the court need not find that any person has been convicted under that section in order to find that the child is an abused child." Unlike the "beyond a reasonable doubt" standard used in criminal cases, juvenile courts must analyze allegations of abuse under the somewhat lesser "clear and convincing" standard. R.C. 2151.35(A). "Clear and convincing" is that level of evidence which is sufficient to establish in the mind of the trier of fact a "firm belief or conviction as to the facts sought to be established." Cross v. Ledford (1954),161 Ohio St. 469, paragraph three of the syllabus.
As it pertains to the facts of the present case, R.C.2919.22(B)(3) provides that no person shall do the following to a child under eighteen years of age:
 "Administer corporal punishment or other physical disciplinary measure, or physically restrain the child in a cruel manner or for a prolonged period, which punishment, discipline, or restraint is excessive under the circumstances and creates a substantial risk of serious physical harm to the child; * * *."
R.C. 2901.01(A)(5) defines "serious physical harm to persons" as:
 "(a) Any mental illness or condition of such gravity as would normally require hospitalization or prolonged psychiatric treatment;
 "(b) Any physical harm that carries a substantial risk of death;
 "(c) Any physical harm that involves some permanent incapacity, whether partial or total, or that involves some temporary, substantial incapacity;
 "(d) Any physical harm that involves some permanent disfigurement or that involves some temporary, serious disfigurement;
 "(e) Any physical harm that involves acute pain of such duration as to result in substantial suffering, or that involves any degree of prolonged or intractable pain."
Finally, "substantial risk" means a "strong possibility, as contrasted with a remote or significant possibility, that a certain result may occur or that certain circumstances may exist." R.C. 2090.01(A)(8).
In this case, the only evidence presented as to the substantial risk of serious physical injury was the opinion testimony of the pediatrician. The doctor, however, neither examined nor interviewed Shain. He admitted he possessed no information about other possible causes for the marks. In fact, the doctor testified solely on the basis of a photograph of the child's buttocks, and was asked to render his opinion, "assuming that [the bruises] were inflicted on the child by corporal punishment." He stated that the bruises appeared to be "sentinel" marks of abuse, i.e., allegedly identifiable as an overlapping injury and a handprint.
Additionally, the doctor's testimony was only that a blow with sufficient force in the kidney area could cause serious physical injury. The doctor did not testify that the marks shown in the photo represented such a blow or occurred absolutely as a result of a spanking. Furthermore, the doctor stated that the injuries sustained by Shain would not have required any medical treatment and would have healed by themselves within a few days.
While we do not in any way condone excessive corporal punishment, we are compelled to conclude that the doctor's testimony, based upon only a view of a photograph, did not establish either the direct connection between the purported injuries and the spanking or that these alleged injuries represented a "strong possibility" that serious physical harm was likely to occur as a result of the spanking. It was undisputed that Shain had been involved in two rather violent incidents with neighborhood children earlier that same evening. A fair viewing of the photograph reveals that it was just as likely for the side finger bruising to have been caused by Shain being pulled backward off his bicycle — a fact that the doctor was never aware of when forming his opinion. Therefore, since appellee failed to establish by clear and convincing evidence that the spanking administered by appellant created a substantial risk of serious physical harm, the trial court erred in denying appellant's motion for a directed verdict.
Normally, our analysis of the case would end upon our making that determination. We cannot, however, put this matter to rest without stating that the collective conscience of this court has been shocked by the behavior of the ECDHS in this matter. The record shows that what ostensibly began as an investigation into a spanking of a child turned into a nightmare for both the children and the father. The children were repeatedly subjected to what amounted to "strip searches" in the guise of "protection." It leads us to question: "Who abused whom?" in this instance.
The role of the child services agency is to guide and help families, not to merely gather evidence for prosecution. An agency has a multitude of options available, and under the facts of this case, could have certainly utilized less intrusive methods to check for indications of abuse. As so astutely stated by the GAL, "It seems that the Agency has lost its focus in this case. [We] can only hope that the Agency is not reacting to the negative media publicity it received in this case by attempting to prove its position at the expense of these minor children." Despite this strong warning from the GAL, the trial court then thrust this family back into the hands of an agency whose behavior arguably caused more harm to the children than the original spanking.
Accordingly, appellant's sole assignment of error is well-taken.
The judgment of the Erie County Court of Common Pleas, Juvenile Division, is reversed and the order of protective supervision of both children is vacated. Court costs of this appeal are assessed to appellee.
JUDGMENT REVERSED.
A certified copy of this entry shall constitute the mandate pursuant to App.R. 27. See, also, 6th Dist.Loc.App.R. 4, amended 1/1/98.
Peter M. Handwork, P.J., James R. Sherck, J.,Richard W. Knepper, J., concur.